Jean-Claude Lapuyade (CA Bar No. 248676)
jlapuyade@jcl-lawfirm.com
JCL LAW FIRM, APC
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
Tel: 619-599-8292
Fax: 619-599-8291

Jason J. Thompson (*pro hac vice* forthcoming)
jthompson@sommerspc.com
Rod M. Johnston (*pro hac vice* forthcoming)
rjohnston@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

*Counsel for Plaintiff and Proposed Class
and Collective Members*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBERTO MORENO**, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **DASH LUBE, GHARDASH ENTERPRISES, INC., KAYLA CORP**, collectively d/b/a as Jiffy Lube, **PAYAM RYAN GHARDASH** and **POYA PAUL GHARDASH**, <br><br> Defendants. | Case No.: **18 CV 1922 DMS NLS** <br><br> **FLSA COLLECTIVE ACTION/ CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff ROBERTO MORENO ("Plaintiff Moreno" or "Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, hereby brings this Collective and Class Action Complaint against Defendants DASH LUBE, GHARDASH ENTERPRISES, INC., KAYLA CORP (collectively doing business as Jiffy Lube), PAYAM RYAN GHARDASH and POYA PAUL GHARDASH (hereinafter collectively referred to as "Defendants"), jointly and severally, and states as follows:

## INTRODUCTION

1. This is a collective and class action brought for violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq*. as a FLSA § 216(b) collective action and California statewide class action pursuant to Fed. R. Civ. P. 23(b)(3) for state law claims, including the California Labor Code ("Labor Code"), the California Industrial Welfare Commission ("IWC") Wage Order No. 4, the California Business & Professions Code section 17200, *et seq.*, and others as pleaded below.

2. Defendants employed Plaintiff and other similarly situated hourly employees at Defendants' Jiffy Lube automotive oil change shops located throughout Southern California.

3. Plaintiff and the putative FLSA collective and Rule 23 class members he seeks to represent regularly worked beyond 40 hours in a workweek and eight hours in a workday but were not paid the required overtime premiums for all overtime hours worked.

4. The FLSA and the Labor Code require employers—including Defendants—to compensate employees—including Plaintiff—for work performed beyond 40 hours in each given workweek at a rate one and one-half times the employees' normal hourly rates.

5. The Labor Code further requires employers—including Defendants—to compensate employees—including Plaintiff—for work performed beyond eight hours in each given workday at a rate one and one-half times the employees' normal hourly rates.

6. Defendants were aware of their obligation to pay overtime premiums to Plaintiff for work performed beyond 40 hours in a workweek and eight hours in a workday. Nevertheless, Defendants failed and refused to pay overtime premiums to Plaintiff for all

overtime hours worked. Defendants' conduct in that regard amounts to a willful violation of the overtime provisions of the FLSA and Labor Code.

7.     Defendants' above-mentioned overtime violations stem from Defendants' common policy and practice of requiring Plaintiff and similarly situated employees to perform substantial amounts of work activities off the clock. Specifically, Defendants maintained a common policy and practice of (a) illegally altering employees' timecards to eliminate numerous hours worked, including overtime hours, (b) training and instructing employees to record mandatory 60-minute lunch breaks on their timesheets and altering the timecards of employees who fail to comply with this directive, and (c) clocking employees out before the conclusion of their scheduled shifts.

8.     Plaintiff and those similarly situated to him failed to receive *any* compensation—let alone overtime compensation—for the time that Defendants illegally subtracted from their timecards. Since Plaintiff and those similarly situated regularly worked beyond eight hours per day and 40 hours per week, Defendants' illegal timecard alteration policy also deprived them of overtime pay.

9.     Plaintiff seeks a declaration that his rights, and the rights of the putative Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make him and the Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because his claim raises a federal question under 29 U.S.C. § 201, *et seq*.

11.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent

jurisdiction."

12.     Defendants' annual sales exceed $500,000, and they have more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendants' employees engage in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

13.     Plaintiff's state law claims originate from the same facts that form the basis of his federal claims. Thus, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Defendants because they reside and conduct substantial business activities within the state of California.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(d) because (a) Defendants conduct substantial business activities within this District such that they reside in this District, specifically, Defendants own, operate and manage at least two Jiffy Lube franchise service centers located within this District; (b) at least some of the putative class members worked and were paid in this District; (c) a substantial portion of the obligations, liabilities and breaches complained of herein arose or occurred in this District; and (d) at least one defendant maintains its principal executive office in this District. In sum, Defendants own, operate, and/or maintain offices, transact business, employ workers, or otherwise are found within this District.

## PARTIES

16.     Plaintiff Moreno resides in Los Angeles, California and was employed by Defendants as an hourly technician at Defendants' Jiffy Lube franchise service center located at 2271 Pacific Coast Highway, Lomita, California 90717 from February 2015 to January 2016; and at 3061 Overland Avenue, Los Angeles, California 90034 from August 2016 to the present. Defendants compensate Plaintiff Moreno through the payment of an hourly wage, most recently at the rate of $11.50 per hour. (*See Exhibit 1*, ("Moreno Pay Stub").) Plaintiff Moreno signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit 2*.

17. Technicians—including Plaintiff Moreno—are responsible for vehicle maintenance and light care like oil changes and tire rotations.

18. Defendant Dash Lube is a California corporation (California Corporate Number C3857983) with its principal executive office located at 2271 Pacific Coast Highway, Lomita, California 90717. Dash Lube can be served via its registered agent, Payam Ryan Ghardash, at the same address.

19. Defendant Ghardash Enterprises, Inc. is a California corporation (California Corporate Number C2748182) with its principal executive office located at 2271 Pacific Coast Highway, Lomita, California 90717. Ghardash Enterprises, Inc. can be served via its registered agent, Poya Paul Ghardash, at the same address.

20. Defendant Kayla Corp is a California corporation (California Corporate Number C3766841) with its principal executive office located at 1122 West Valley Parkway, Escondido, California 92026. Kayla Corp can be served via its registered agent, Payam Ryan Ghardash, at 2271 Pacific Coast Highway, Lomita, California 90717.

21. Defendant Payam Ryan Ghardash ("Defendant Ryan Ghardash") is a Director and the Secretary and registered agent for service of process of Defendant Dash Lube; and a Director and the Chief Executive Officer and registered agent for service of process of Defendant Kayla Corp.

22. Defendant Poya Paul Ghardash ("Defendant Paul Ghardash") is a Director and the Chief Executive Officer and Chief Financial Officer of Defendant Dash Lube; a Director and the Chief Executive Officer, President, Secretary, Chief Financial Officer, and registered agent for service of process of Defendant Ghardash Enterprises, Inc.; and a Director and the Secretary and Chief Financial Officer of Defendant Kayla Corp.

23. Defendants Paul and Ryan Ghardash have complete autonomy with respect to Defendants' day-to-day operations and were directly involved in—and directly responsible for—the illegal pay policies and practices articulated herein.

24. Nonparty Jiffy Lube International, Inc. "operates franchised and company-owned service centers in North America. The company offers oil change, air conditioning,

air filtration, battery maintenance and replacement, brake, cooling system, drivetrain, engine, fuel system cleaning, emissions and inspection, tire, transmission, windshield, alignment, and suspension services. It also provides fleet services; credit cards; and gift cards. The company was founded in 1979 and is based in Houston, Texas. Jiffy Lube International, Inc. operates as a subsidiary of Shell Oil Company." https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=129473 (last visited July 30, 2018).

25.   Defendants Paul and Ryan Ghardash, in concert with the corporate defendants identified above, own, manage, operate and control at least five Jiffy Lube franchise service centers, located at the following addresses:

   a. 3061 Overland Avenue, Los Angeles, California 90034-3417 (Service Center #1803).

   b. 2271 Pacific Coast Highway, Lomita, California 90717-2533 (Service Center #930).

   c. 11001 Santa Monica Boulevard, Los Angeles, California 90025-3503 (Service Center #1925).

   d. 1122 West Valley Parkway, Escondido, California 92025-2559 (Service Center #3815).

   e. 314 West El Norte Parkway, Escondido, California 92026-1925 (Service Center #415).

## JOINT EMPLOYER ALLEGATIONS

26.   Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

27.   The definition of "employer" under the FLSA is not limited by the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. *Real v. Driscoll Strawberry Assocs.,* 603 F.2d 748, 754 (9th Cir. 1979).

28.   Congress defined "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), describing this language as "the broadest definition that has ever

been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)); *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 (1985) (same).

29.    The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961).

30.    Two or more employers may jointly employ someone for purposes of the FLSA. *Falk v. Brennan,* 414 U.S. 190, 195 (1973).

31.    All joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a) (1981).

32.    Regulations issued by the Department of Labor give the following examples of joint employment situations:

> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

C.F.R. § 791.2(b) (footnotes omitted).

33.    The ultimate question of whether a party is an "employer" is a legal issue. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983). The ultimate determination must be based "upon the circumstances of the whole activity." *Id.* at 1470 (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722 (1947)).

34.    During the applicable statutory period, Defendant Ryan Ghardash was a Director and the Secretary of Defendant Dash Lube; and a Director and the Chief Executive Officer of Defendant Kayla Corp. Accordingly, Defendant Ryan Ghardash operates control over Defendants' daily operations, including compensation and work hours. Plausibly, by

Defendant Ryan Ghardash's exercise of control, input, and responsibility for issuing accurate, legitimate, and proper paychecks for Plaintiff and all other hourly employees, he meets the test for joint employer.

35.     During the applicable statutory period, Defendant Paul Ghardash was a Director and the Chief Executive Officer and Chief Financial Officer of Defendant Dash Lube; a Director and the Chief Executive Officer, President, Secretary and Chief Financial Officer of Defendant Ghardash Enterprises, Inc.; and a Director and the Secretary and Chief Financial Officer of Defendant Kayla Corp. Accordingly, Defendant Paul Ghardash operates control over Defendants' daily operations, including compensation and work hours. Plausibly, by Defendant Paul Ghardash's exercise of control, input, and responsibility for issuing accurate, legitimate, and proper paychecks for Plaintiff and all other hourly employees, he meets the test for joint employer.

36.     Defendants Ryan and Paul Ghardash controlled the rate and method of wage payment for Defendants' hourly employees. Plausibly, through Defendant Ryan and Paul Ghardash's exercise of control, input, and responsibility over the rate and method of wage payments for Plaintiff and all other hourly employees, they meet the test for joint employer.

37.     Defendants Ryan and Paul Ghardash were also responsible for the day-to-day supervision of Defendants' technicians and other hourly employees. Specifically, they were consistently present at Defendants' various Southern California Jiffy Lube locations, directing their employees' work and enforcing Defendants' employment policies and practices. Plausibly, by Defendants Ryan and Paul Ghardash's exercise of control, input, and responsibility over the day-to-day supervision of Defendants' hourly employees, they meet the test for joint employer.

38.     Defendants Ryan and Paul Ghardash controlled the hiring and firing of Defendants' technicians and other hourly employees. Specifically, Defendants Ryan and Paul Ghardash had the authority to hire and fire Defendants' employees as they saw fit, and carried out the hiring and firing of Defendants' employees on a regular basis. Plausibly, by Defendants Ryan and Paul Ghardash's exercise of control, input, and

responsibility over the hiring and firing of Defendants' hourly employees, they meet the test for joint employer.

39.     Defendants maintained employment records in connection with their technicians and other hourly employees. Furthermore, Defendants actively kept, updated, and maintained their hourly employees' payroll records and performance evaluations related to their employment. Plausibly, by all Defendants' exercise of control, input and responsibility over their hourly employees' employment records, they meet the test for joint employer.

40.     Defendants controlled the training, structure and conditions of employment for Plaintiff and all other hourly employees. Plausibly, by Defendants' exercise of control, input, and responsibility over the training, structure and conditions of employment of the technicians and other hourly employees, they meet the test for joint employer.

41.     Defendants provided all the necessary tools, equipment and materials used by the technicians and other hourly employees. Such tools, equipment and materials were necessary for the technicians and other hourly employees to perform their work. Plausibly, by Defendants providing all necessary tools, equipment and materials used by the technicians and other hourly employees, they meet the test for joint employer.

42.     Regardless of which of the Defendants is viewed as having had the power to hire and fire, Defendants Ryan and Paul Ghardash's power over the employment relationship by virtue of their overarching control over the purse strings was substantial, and thus each Defendant meets the test for joint employer. *Bonnette, supra* at 1470.

43.     Regardless of any of the individual criteria for joint employer, as active business owners, Defendants Ryan and Paul Ghardash also had complete economic control over the employment relationship. The "economic reality" was that they employed technicians and other hourly employees for their benefit, and thus they meet the test for joint employer. *Bonnette, supra* at 1470.

44.     The fact that each Defendant may not have exercised each and every aspect of the test for employer under the law, and may have delegated some of the responsibilities

to others, does not alter their status as employers; it merely makes them joint employers. *Id.*

45.     Whether employers, or joint employers, each Defendant is nevertheless liable for the wage violations pleaded in this Complaint. *Falk, supra;* 29 C.F.R. § 791.2(a).

46.     The above well-pleaded facts all support Plaintiff's standing to sue the Defendants named herein as joint employers and seek damages for the alleged violations under a joint employment theory. *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 966 (N.D. Cal. 2017); *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 940 (N.D. Cal. 2016).

47.     Upon information and belief, Defendants jointly employed dozens (if not hundreds) of technicians and other hourly employees—including Plaintiff—in California during the last four years to perform vehicle maintenance, light care like oil changes, and tire rotations.

48.     Plaintiff believes, and alleges thereon, that Defendants are jointly and severally responsible for the circumstances alleged herein, and proximately caused the fraudulent, unlawful, unfair, deceptive acts and wage violations complained of herein.

49.     At all times herein mentioned, Defendants approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

50.     Defendants acted willfully in violating the laws and regulations pleaded in this Complaint.

51.     At all times herein mentioned, Defendants' acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

## GENERAL ALLEGATIONS

### Defendants Failed to Compensate Employees for All Time Worked

52.     Over the past four years, Defendants have employed dozens (if not hundreds) of hourly employees—including Plaintiff—at their various Jiffy Lube franchise service centers in Southern California.

53. On numerous occasions, Plaintiff and other similarly situated employees were required to work beyond 40 hours in a single workweek and eight hours in a single workday.

54. Defendants, however, maintained a company-wide policy of refusing to pay their hourly employees for all hours worked, including overtime.

55. Specifically, Defendants maintained a pattern and practice of altering employees' timecards to eliminate numerous hours worked, including overtime hours.

56. On January 14, 2018, Plaintiff logged into Defendants' electronic timekeeping system, pulled up a summary of his timesheet for that week, and took a picture of it. (*See Exhibit 3* ("Moreno Timesheet #1") showing that Plaintiff worked 52.4 hours during the week of January 8-14, 2018.)

57. On January 21, 2018, Plaintiff asked Defendants' assistant manager to access his Employee Timesheet Report (which can only be accessed by management level employees) and send him a picture of it. (*See Exhibit 4* ("Moreno Timesheet Report") showing that Plaintiff's timesheet had been altered from 52.4 hours to 50.8 hours, *with an asterisk next to each of the four entries that had been edited by Defendants*.)

58. Thus, the Moreno Timesheet Report *plainly* shows that Defendants *intentionally* altered Plaintiff's timesheet for the week of January 8-14, 2018 to eliminate at least 1.6 hours worked. (*See Exhibits 3-4*.) Defendants' conduct in this regard constitutes, among other things, wage theft, fraud and conversion.

59. In addition to Defendants' above-mentioned practice of altering employees' timecards to eliminate numerous hours worked (including overtime hours), Defendants engaged in a pattern and practice of requiring their employees to perform substantial amounts of work during their lunch breaks but failing to compensate them for the same.

60. Defendants purportedly allowed Plaintiff and similarly situated employees to take a one-hour lunch break per shift.

61. In reality, due to heavy volumes of customer traffic, Plaintiff and similarly situated employees routinely cut their lunch breaks short in order to service Defendants'

customers.

62.     Notwithstanding the fact that Plaintiff and similarly situated employees routinely performed substantial amounts of work during their 60-minute lunch breaks, Defendants failed and refused to compensate them for it.

63.     Defendants accomplished this policy by: (a) training and instructing their employees to record a mandatory 60-minute lunch break for each shift, regardless of whether or not employees actually received a work free, uninterrupted, 60-minute lunch break; and (b) altering the timecards of employees who failed to comply with this directive.

64.     For example, a January 18, 2018 text message exchange between Plaintiff and Defendants' Store Manager confirms that Plaintiff's coworker, Christopher Stevens, was routinely taking 30-45 minute lunch breaks and that Defendants engaged in a pattern and practice of altering Mr. Stevens' timecards to record fictitious 60-minute breaks for each day that Mr. Stevens recorded a lunch break of less than one hour. (*See Exhibit 5* ("Moreno Text Message #1").)

> "I think someone is messing with my time sheet. Someone has [been changing] it." –Plaintiff.

> "Umm the ones who can do that is Paul [Ghardash] now.. I could do time edits before but [not] anymore…. ***I know they made Chris [Stevens] time edit[] [because] he was taking 30-45 minutes lunches*** .. what days were edited,?????" –Defendants' Store Manager.

> "That sucks [redacted]. Tuesday and yesterday. I always stay with E.Z. till he closes and for paul/Ryan to do that is f*cked up." -Plaintiff.

> "Are you just now finding out how they are? I should know by now.. but ok.. I don't think it's Ryan [Ghardash], he doesn't involve himself in that. I know who does the paper work is Paul [Ghardash].. tell ez to do a time edit paper I will send it to Ryan tomorrow so he can fix you're time… for those day." – Defendants' Store Manager.

> ***

> "I'm going to text Paul [Ghardash] about it. I'm tired of them mistreat[ing] us." –Plaintiff.

> "You have your rights.. go for it.., whether they admit to it is another thing." -Defendants' Store Manager.

*Id*. (emphasis added.)

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

65.    In addition to Defendants' above-mentioned practices of altering employees' timecards to eliminate numerous hours worked (including overtime hours) and requiring their employees to perform substantial amounts of uncompensated work during their lunch breaks, Defendants engaged in a pattern and practice of clocking their employees out before the conclusion of their shifts.

66.    For example, on April 16, 2018, Plaintiff clocked in at 10:19 AM, recorded a mandatory one-hour lunch break (12:47 PM - 1:47 PM), and clocked out at the conclusion of his shift (7:00 PM).

67.    Upon reviewing his timesheet the following morning (April 17, 2018), Plaintiff discovered that Defendants clocked him out at 5:00 PM. (*See Exhibit 6* ("Moreno Timesheet #2").)

68.    Plaintiff immediately texted Defendant Paul Ghardash:

> Hey paul I just saw my time sheet and im not happy about it. Yesterday E.Z. and I stood here in you're shop till 6:58. I don't understand why or who clocked me out at 5:00. I don't understand why anyone would do that. I hope you can fix the mistake that was made yesterday.

(*Exhibit 7*, ("Moreno Text Message #2").)

69.    After informing Plaintiff that he was "investigating" the matter, *id.*, Defendant Paul Ghardash changed Plaintiff's clock out time to 7:00 PM. (*See Exhibit 8* ("Moreno Timesheet #3").)

**Defendants Unlawfully Benefitted From Their Employees' Uncompensated Work**

70.    At all relevant times, Defendants directly benefited from the uncompensated off-the-clock work performed by their employees.

71.    At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their employees.

72.    At all relevant times, Defendants were able to track the amount of time their employees spent working; however, Defendants failed to document, track, or pay their employees for all the work they performed, specifically, the work that was illegally subtracted from their timesheets.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

73.    At all relevant times, Plaintiff and those similarly situated to him were non-exempt employees, subject to the requirements of the FLSA and the Labor Code.

74.    At all relevant times, Defendants' policies and practices deprived their employees of wages owed for the off-the-clock work activities. Because Defendants' employees routinely worked over 40 hours in a workweek and more than eight hours per day, Defendants' policies and practices also deprived them of overtime pay.

75.    Defendants knew or should have known that Plaintiff's and other hourly employees' off-the-clock work was compensable under the law. Indeed, in light of Defendants' manipulation of employees' timecards as demonstrated above, there is no conceivable way for Defendants to establish that they acted in good faith.

**Defendants Failed to Provide Rest Periods in Violation of California Law**

76.    IWC Wage Order No. 4 requires that employers must authorize and permit nonexempt employees to take a rest period that must, insofar as practicable, be taken in the middle of each work period. The rest period is based on the total hours worked daily and must be at the minimum rate of a net ten consecutive minutes for each four hour work period, or major fraction thereof. The Division of Labor Standards Enforcement (DLSE) considers anything more than two hours to be a "major fraction" of four. A rest period is not required for employees whose total daily work time is less than three and one-half hours. The rest period is counted as time worked and therefore, the employer must pay for such periods.

77.    If an employer fails to provide an employee a rest period in accordance with an applicable IWC Order, the employer shall pay the employee one additional hour of pay at the employee's regular rate of pay for each workday that the rest period is not provided. Labor Code Section 226.7. Thus, if an employer does not provide all of the rest periods required in a workday, the employee is entitled to one additional hour of pay for that workday, not one additional hour of pay for each rest period that was not provided during that workday.

78.    At all times material hereto, Defendants violated IWC Wage Order No. 4 and

Labor Code Section 226.7 by consistently failing to provide Plaintiff and similarly situated employees with ten-minute rest breaks or one-hour's wages in lieu thereof for every four hours or major fraction thereof worked.

79.    Thus, Plaintiff and all other hourly employees are entitled to recover the premium of one additional hour of pay at their regular rate of compensation for each workday that the rest period was not provided.

**Defendants Failed to Provide Meal Periods in Violation of California Law**

80.    In California, an employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than thirty minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. A second meal period of not less than thirty minutes is required if an employee works more than ten hours per day, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and employee only if the first meal period was not waived. Labor Code Section 512.

81.    If an employer fails to provide an employee a meal period in accordance with an applicable IWC Order, the employer must pay one additional hour of pay at the employee's regular rate of pay for each workday that the meal period is not provided. IWC Orders and Labor Code Section 226.7. This additional hour is not counted as hours worked for purposes of overtime calculations.

82.    At all times material hereto, Plaintiff and all other similarly situated hourly employees worked more than ten hours on numerous separate workdays. Defendants violated IWC Wage Order No. 4 and Labor Code Sections 226.7 and 512(a) by not providing Plaintiff and similarly situated employees with a second meal period or one hour's wages in lieu thereof for shifts in excess of ten hours.

83.    Thus, Plaintiff and all other hourly employees are entitled to recover the premium of one additional hour of pay at their regular rate of compensation for each

workday in excess of ten hours that the second meal period was not provided.

## FLSA COLLECTIVE ACTION ALLEGATIONS

84.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of:

> *All current and former hourly employees who worked for Defendants at any time from July 30, 2015 through judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

85.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated employees.

86.    Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

87.    Consistent with Defendants' policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation for all hours they worked beyond 40 hours in a workweek.

88.    Defendants assigned and/or were aware of all of the work that Plaintiff and the FLSA Collective members performed.

89.    As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice includes, but is not limited to:

      a.   willfully failing to pay their employees, including Plaintiff and the FLSA Collective, for all hours worked including premium overtime wages for all hours worked in excess of 40 hours per workweek; and

      b.   willfully failing to accurately record all of the time that their employees, including Plaintiff and the FLSA Collective, worked for Defendants' benefit.

90.    Defendants are aware or should have been aware that federal law required

them to pay Plaintiff and the FLSA Collective overtime premiums for all hours worked in excess of 40 per workweek.

91.     Defendants failed to properly maintain timekeeping and payroll records pertaining to the FLSA Collective under the FLSA, 29 U.S.C. § 211(c).

92.     Defendants' unlawful conduct was widespread, repeated, and consistent.

93.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

94.     The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues—the amount of uncompensated off-the-clock work owed to each employee—do not vary substantially among the proposed FLSA Collective members.

95.     There are many similarly situated current and former hourly employees who were underpaid in violation of the FLSA who would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join it.

96.     Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

97.     Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

98.     Plaintiff estimates the proposed FLSA Collective, including both current and former employees over the relevant period, will include dozens (if not hundreds) of workers. The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

99.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of all similarly situated current and former employees of Defendants who are or were employed at any time in the last four years. Plaintiff proposes the following class definition:

> *All current and former hourly employees who worked for Defendants in California at any time from July 30, 2014 through judgment.*

Plaintiff reserves the right to amend the putative class definition if necessary.

100.    Plaintiff shares the same interests as the putative class and will be entitled under the Labor Code to unpaid overtime compensation, attorneys' fees, and costs and lost interest owed to him under nearly identical factual and legal standards as the remainder of the putative Class.

101.    The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants employed dozens (if not hundreds) of technicians and other hourly employees throughout California. The Class members are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendants' personnel, scheduling, time, and payroll records, and from input received from the putative Class members.

102.    The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiff and the Class. Individual questions that Plaintiff's claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

  a.  Whether Defendants engaged in a policy or practice of failing to pay each Class member regular wages for all time worked;

b. Whether Defendants engaged in a policy or practice of failing to pay each Class member overtime compensation for all overtime hours worked;

c. Whether Defendants violated Sections 201 to 203 of the Labor Code by willfully failing to pay all wages and compensation due each Class member who quit or was discharged;

d. Whether Defendants violated Section 226 of the Labor Code by willfully failing to provide accurate itemized wage statements showing the number of hours worked by each Class member and the corresponding hourly rate;

e. Whether Defendants violated Sections 1174 and 1175 of the Labor Code and the applicable IWC Orders by failing to maintain records pertaining to when Class members began and ended each work period, the total daily hours worked, and the total hours worked per pay period;

f. Whether Defendants violated Sections 226.7 and 512 of the Labor Code and the applicable IWC Orders by failing to provide Class members with meal and rest periods or one hour's wages in lieu thereof;

g. Whether Defendants were unjustly enriched by the work and services performed by Class members without compensation;

h. Whether Defendants engaged in unfair business practices in violation of Business and Professions Code section 17200, *et seq.*; and

i. Whether Defendants should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating California state law.

103. The status of all individuals similarly situated to Plaintiff raises an identical legal question: whether Defendants' employees are entitled to back wages, including overtime.

104. The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiff and the putative Class members were all employed by Defendants and performed their job duties without receiving wages, including overtime wages, owed for that work.

105. The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiff and the putative Class members, and because Plaintiff's attorneys have successfully prosecuted many complex class actions, including wage and hour class and collective actions, and will adequately represent the

interests of Plaintiff and the putative Class members.

106.   The putative Class meets the predominance requirement of Rule 23(b)(3) because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

107.   The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

108.   Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

**COUNT I**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*. - FAILURE TO PAY OVERTIME WAGES**

109.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

110.   At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

111.   At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

112.   Plaintiff and the FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

113.   Plaintiff either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the

production of goods for commerce.

114.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

115.    At all times relevant to this action, Defendants routinely required Plaintiff and the FLSA Collective members to perform off-the-clock work by altering their timecards to eliminate numerous hours worked (including overtime hours), requiring them to record mandatory one-hour lunch breaks and altering the timecards of those FLSA Collective members who failed to comply with this directive, and clocking them out before the conclusion of their shifts—thus failing to pay these employees the federally mandated overtime compensation for this work.

116.    The off-the-clock work performed by Plaintiff and the FLSA Collective members is an essential part of their jobs, and these activities and the time associated with them are not *de minimis*.

117.    In workweeks where Plaintiff and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage. 29 U.S.C. § 207.

118.    Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have determined how long it took their hourly employees to perform their off-the-clock work and could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

119.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, each employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 1194, 1197, 1197.1
## AND IWC WAGE ORDER 4 - FAILURE TO PAY MINIMUM WAGE AND

**REGULAR WAGES FOR ALL HOURS WORKED**

120.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

121.   At all relevant times, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, especially minimum wage and regular wages for all hours worked

122.   Labor Code §§ 223, 1194, 1197, 1197.1 and IWC Wage Order No. 4 §§ 2(K), 4(B), provide that employees must be paid no less than the applicable minimum wage for all hours worked. *See also Armenta v. Osmose, Inc*., 135 Cal. App. 4th 314, 323 (2005) (indicating that California's Labor Code requires payment for all hours worked at the employee's regular rate of pay).

123.   At all relevant times, Defendants failed and refused to pay Plaintiff and the Rule 23 California Class members minimum wage and regular wages for all hours worked including the off-clock-work alleged in this Complaint.

124.   Defendants intentionally, maliciously, fraudulently and with the intent to deprive Plaintiff and the Rule 23 California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying Plaintiff and other Rule 23 California Class members minimum and regular wages for all hours worked.

125.   Plaintiff and the Rule 23 California Class were entitled to receive wages at their lawful regular rate of pay, including any shift differential where applicable, for all hours worked including the off-the-clock work alleged in this Complaint. Defendants' failure to pay such wages, as alleged above, was a willful violation of Labor Code §§ 223, 1194, 1197, 1197.1 and IWC Wage Order No. 4 §§ 2(K), 4(B).

126.  Wherefore, Plaintiff demands payment of the unpaid balance of the full amount of wages due for unpaid time worked by Plaintiff and the Rule 23 California Class at their lawful regular rates of pay, including any shift differential where applicable, and

including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2, as a result of Defendants' failure to pay for all time worked as is required under California law.

**COUNT III**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 510, 1194, 1198**
**AND IWC WAGE ORDER 4 – FAILURE TO PAY OVERTIME**

127. Plaintiff re-alleges and incorporates all previous paragraphs herein.

128. At all relevant times, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, especially overtime compensation.

129. At all relevant times, Plaintiff and the Class regularly performed non-exempt work and were thus subject to the overtime requirements of California law.

130. Labor Code §§ 510 and 1198 and IWC Wage Order No. 4 § 3(A) provide that: (a) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight hours in a workday up to 12 hours in a workday, in excess of 40 hours in a workweek, and for the first eight hours of work on the seventh consecutive day of a workweek; and (b) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of 12 hours in a workday, and in excess of eight hours on the seventh consecutive day of work in a workweek.

131. At all relevant times, Plaintiff and the Class regularly worked in excess of eight hours in a workday and/or in excess of 40 hours in a workweek.

132. At all relevant times, Defendants failed and refused to pay Plaintiff and the Class members for all hours actually worked.

133. Defendants intentionally, maliciously, fraudulently and with the intent to deprive Plaintiff and the Rule 23 California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying Plaintiff and other Rule 23 California Class members overtime wages for all overtime

hours worked.

134.   Plaintiff and the Class were entitled to receive overtime compensation at their lawful premium rate of pay. Defendants' failure to pay lawful premium overtime wages, as alleged above, was a willful violation of Labor Code §§ 510, 1198, and IWC Wage Order No. 4.

135.   Wherefore, Plaintiff demands payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendants' failure to pay for all time worked and such premium compensation, as is required under California law.

**COUNT IV**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 221 AND 223 - UNLAWFUL DEDUCTIONS**

136.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

137.   At all relevant times, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, especially overtime compensation and minimum and regular wages for all hours worked.

138.   Defendants made deductions from Plaintiff's and the Rule 23 California Class members' paychecks in the amount of the unpaid overtime compensation and minimum and regular wages earned by the employees during the pay period to avoid paying overtime, regular and minimum wages.

139.   Labor Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

140.   Labor Code § 223 provides that where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract. Labor Code section 225 further provides that the violation of any provision of Labor Code §§ 221 and 223 is a misdemeanor.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

141.   As a result of the conduct alleged above, Defendants have unlawfully collected or received from Plaintiff and the Rule 23 California Class part of the wages paid to their employees.

142.   Wherefore, Plaintiff demands the return of all wages unlawfully deducted from the paychecks, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 225.5 and 1194.

**COUNT V**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 226 AND 1174 - FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**

143.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

144.   Labor Code §§ 226 and 1174 provide that every employer shall, semi-monthly or at the time of payment of wages, furnish each employee, either as a detachable part of the check or separately, an accurate, itemized statement in writing showing the total hours worked, and the applicable hourly rates and corresponding total number of hours worked.

145.   At all relevant times, Defendants failed to maintain proper records and furnish Plaintiff and the Class members, either semi-monthly or at the time of each payment of wages, an accurate, itemized statement conforming to the requirements of Labor Code §§ 226 and 1174.

146.   At all relevant times, Defendants failed to furnish Plaintiff and the Class members with accurate wage statements in writing, showing: (1) gross wages earned; (2) total hours worked by each respective employee; (3) all deductions; (4) net wages earned; (5) the inclusive dates of the period for which the employee is paid; (6) the name of the employee and only the last four digits of his or her social security number or an employee identification number; (7) the name and address of the legal entity that is the employer; and (8) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

147.   Plaintiff is informed and believes that Defendants knew or should have known that Plaintiff and the Class members were entitled to receive wage statements compliant with Labor Code §§ 226 and 1174, and that Defendants willfully and intentionally failed

25

to provide Plaintiff and the Class members with such accurate, itemized statements showing, for example, accurate hours and overtime calculations.

148.   Wherefore, Plaintiff demands that Defendants pay each and every Class member $50.00 for the initial pay period in which the violation occurred and $100 for each subsequent violation, up to a maximum of $4,000.00 pursuant to Labor Code § 226, as well as reasonable attorneys' fees and costs.

**COUNT VI**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 201, 202 AND 203 - WAITING TIME VIOLATIONS**

149.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

150.   Labor Code §§ 201 and 202 require employers to pay their employees all wages due within the time specified by law. Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of 30 days of wages.

151.   The Rule 23 California Class members who ceased employment with Defendants are entitled to unpaid compensation, but to date have not received such compensation.

152.   More than 30 days have passed since certain Rule 23 California Class members left Defendants' employ.

153.   As a consequence of Defendants' willful conduct in not paying compensation for all hours worked, the Rule 23 California Class members whose employment ended during the class period are entitled to 30 days' wages under Labor Code § 203, together with interest thereon and attorneys' fees and costs.

**COUNT VII**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7, 512 AND IWC WAGE ORDER 4 - FAILURE TO PROVIDE MEAL AND REST PERIODS**

154.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

155.   Wage Order No. 4 provides that, "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes,

except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee." Wage Order No. 4 § 11(A). A second meal period of not less than thirty minutes is required if an employee works more than ten hours per day, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and employee only if the first meal period was not waived. Labor Code Section 512.

156.   Wage Order No. 4 further provides, in part, "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable, shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes rest time per four (4) hours or major fraction thereof…. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." Wage Order No. 4 § 12(A).

157.   Labor Code Sections 226.7 and 512, and Wage Order No. 4 §§ 11(B) and 12(B) require Defendants to provide employees all meal and rest periods specified in the applicable Wage Order. These laws and regulations further entitle employees to be paid one additional hour of pay per day at their regular rate of compensation for each day of denied meal period, in addition to one additional hour of pay per day at their regular rate of compensation for each day of denied rest period, during the relevant statutory periods.

158.   During the relevant time period, Plaintiff and the Rule 23 California Class members worked in excess of ten hours on numerous separate workdays. Yet Defendants failed and refused to provide them with a second uninterrupted, work-free 30-minute meal period, or one hour's wages in lieu thereof, for shifts in excess of ten hours worked. Further, Defendants consistently failed and refused to provide Plaintiff and the Rule 23 California Class members with uninterrupted, work-free rest periods of not less than ten minutes, or one hour's wages in lieu thereof, for every four hours or major fraction thereof worked.

159.   Plaintiff is informed and believes and thereon alleges that Defendants' failure to provide meal and rest periods, or one hour's wages in lieu thereof, was willful,

purposeful, and unlawful and done in accordance with the policies and practices of Defendants' operations. As a result of Defendants' knowing and intentional policies and procedures, Plaintiff and Rule 23 California Class members were not provided with all required meal and rest periods, or one hour's wages in lieu thereof.

160.   Plaintiff is informed and believes and thereon alleges that Defendants did not properly maintain records pertaining to when Plaintiff and Rule 23 California Class members began and ended each meal period, in violation of Labor Code § 1174 and Wage Order No. 4 § 7(A).

161.   As a result of Defendants' knowing, willful, and intentional failure to provide meal and rest periods, Plaintiff and Rule 23 California Class members are entitled to recover one additional hour of pay at the employee's regular rate of pay for each work day that a meal period was not provided, pursuant to Labor Code § 226.7 and Wage Order No. 4 § 11(B), in addition to one hour of pay at the employee's regular rate of pay for each work day that a rest period was not provided, pursuant to Labor Code § 226.7 and Wage Order No. 4 § 12(B), and penalties, reasonable attorneys' fees, and costs pursuant to Labor Code § 218.5.

162.   Wherefore, Plaintiff demands pursuant to Labor Code §§ 226.7, 227.7 and 512, and Wage Order No. 4 §§ 11(B) and 12(B), that Defendants pay each Rule 23 California Class member one additional hour of pay at the Class member's regular rate of compensation for each work day that a required meal period was not provided and one additional hour of pay at the Class member's regular rate of compensation for each work day that a required rest period was not provided, and the relief requested below in the Prayer for Relief.

## COUNT VIII
## VIOLATION OF BUSINESS AND PROFESSIONS CODE, § 17200, *et seq.* - UNFAIR, UNLAWFUL AND/OR FRAUDULENT BUSINESS PRACTICES

163.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

164.   Defendants engaged and continue to engage in unfair business practices in California by practicing, employing and utilizing the unlawful practices described above,

including but not limited to: (a) requiring their hourly employees to work off-the-clock without compensation; (b) making deductions to employees' paychecks to recover overtime premiums earned by the employee; (c) requiring employees to work overtime without lawful premium compensation; and (d) failing to provide accurate, itemized wage statements.

165.   In addition, the conduct alleged in each of the previously stated causes of action constitutes an unlawful and unfair business practice within the meaning of Business & Professions Code § 17200, *et seq.*

166.   As a result of Defendants' conduct, Plaintiff and the Class have been harmed as described in the allegations set forth above.

167.   The actions described above constitute false, unfair, fraudulent, and deceptive business practices within the meaning of California Business & Professions Code § 17200, *et seq.* By and through such unfair, unlawful and/or fraudulent business practices, Defendants obtained valuable property, money and services from Plaintiff and the Class, and have deprived Plaintiff and the Class of fundamental rights and privileges guaranteed to all employees under California law.

168.   Defendants were unjustly enriched by the policies and practices described herein, and those policies and practices conferred an unfair business advantage on Defendants over other businesses providing similar services that routinely comply with the requirements of California law.

169.   Plaintiff seeks, on his own behalf, and on behalf of the putative Class members, full restitution of all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein, as necessary and according to proof, and/or disgorgement of all profits acquired by Defendants by means of the acts and practices described herein.

170.   Plaintiff seeks, on his own behalf, and on behalf of other Class members similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair business practices complained of herein. Defendants' unlawful conduct, as described above,

unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff and all Class members in that Defendants will continue to violate these California laws unless specifically ordered to comply with the same. This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are entitled under California law. Plaintiff has no other adequate remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

## COUNT IX
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

171.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

172.   Defendants contracted with Plaintiff and other members of the Class to provide their labor in return for a set hourly compensation for each hour worked.

173.   Defendants were responsible for accurately accounting for the number of hours worked by Plaintiff and each Class member, and paying them accordingly.

174.   Defendants failed to properly account, and pay, for each hour worked by Plaintiff and members of the Class, breaching the implied covenant of good faith and fair dealing.

175.   Accordingly, Plaintiff seeks, on his own behalf, and on behalf of other Class members similarly situated, damages in the amount of any unpaid compensation improperly withheld by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the putative Collective and Class members, requests judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above and designating Plaintiff as Representative of the proposed FLSA Collective;

b. Ordering Defendants to disclose, in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the

potential class members of their rights under the FLSA;

c. Certifying the proposed Rule 23 Class and designating Plaintiff as representative of the same;

d. Appointing Plaintiff's counsel as Class Counsel;

e. Declaring that Defendants willfully violated the FLSA and its attendant regulations as set forth above;

f. Declaring that Defendants' policies and/or practices of failing to pay overtime wages, failing to pay minimum wages and regular wages for all hours worked, failing to provide meal and rest periods or one hour's wages in lieu thereof, failing to provide accurate wage statements, unlawful deductions and failing to pay all wages earned in a timely manner violate California law;

g. Granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid overtime, minimum and regular wages owed;

h. Awarding liquidated damages in an amount equal to the amount of unpaid overtime wages found due and owing;

i. For statutory and civil penalties pursuant to Labor Code §§ 225.5, 226(e), 226.3, and 226.7;

j. For disgorgement and restitution to Plaintiff and other similarly effected Class members of all funds unlawfully acquired by Defendants by means of any acts or practices declared by this Court to violate the mandate established by California Business and Professions Code § 17200, *et seq.*;

k. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business and Professions Code § 17200, *et seq.*;

l. For an injunction prohibiting Defendants from engaging in the unfair business practices complained of herein;

m. For an injunction requiring Defendants to give notice to persons to whom restitution is owing of the means by which to file for restitution;

n. For actual damages or statutory penalties according to proof as set forth in Labor Code §§ 226, 1174, and IWC Wage Order No. 4, § 7(A) related to record keeping;

o. For an order requiring Defendants to show cause, if any there be, why they should not be enjoined and ordered to comply with the applicable California IWC wage orders related to record keeping for Defendants' employees related to same; and for an order enjoining and restraining Defendants and their agents, servants and employees related thereto;

p. For pre-judgment interest as allowed by Labor Code §§ 218.6, 1194 and 2802(b) and California Civil Code § 3287 and other statutes;

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

q.  For reasonable attorneys' fees, expenses, and costs as provided by the FLSA, Labor Code §§ 218.5, 226(e) and (g), 1194, 2802 and California Code of Civil Procedure § 1021.5; and

r.  For such other and further relief the Court may deem just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Respectfully Submitted,

Dated: August 17, 2018

*/s/Jean-Claude Lapuyade*
Jean-Claude Lapuyade
jlapuyade@jcl-lawfirm.com
JCL LAW FIRM, APC
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
Tel: 619-599-8292
Fax: 619-599-8291

*/s/ Jason J. Thompson*

Jason J. Thompson (*pro hac vice* forthcoming)
jthompson@sommerspc.com
Rod M. Johnston (*pro hac vice* forthcoming)
rjohnston@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

*Counsel for Plaintiff and Proposed Class and Collective Members*

# EXHIBIT 1



00418
**Company Code**
R7 / 4TV 22929845
Jiffy Lube 1803
3061 Overland Ave
Los Angeles, CA 90034

**Loc/Dept**
01/

**Number**
50300

**Page**
1 of 1

## Earnings Statement

Period Starting: 04/02/2018
Period Ending: 04/15/2018
Pay Date: 04/20/2018

Taxable Marital Status: Single
Exemptions/Allowances: Tax Override:
  Federal: 1   Federal:
  State: 1   State:
  Local: 0   Local:
Social Security Number:

**ROBERTO MORENO**

| | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| | 11.5000 | 73.90 | 849.85 | 6613.50 |
| | 17.2500 | 3.50 | 60.38 | 693.76 |
| | | | $910.23 | $7,307.26 |

**Gross Pay**

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 77.40 | 626.40 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -65.67 | 540.40 |
| Social Security | -56.43 | 453.05 |
| Medicare | -13.20 | 105.96 |
| California State Income | -8.14 | 73.85 |
| California State DI | -9.10 | 73.07 |
| | $757.69 | |

**Net Pay**

# EXHIBIT 2

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBERTO MORENO**, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>**DASH LUBE, GHARDASH ENTERPRISES, INC., KAYLA CORP**, collectively d/b/a Jiffy Lube, **PAYAM RYAN GHARDASH** and **POYA PAUL GHARDASH**, jointly and severally,<br><br>          Defendants. | Case No.:<br><br>**CONSENT TO JOIN COLLECTIVE ACTION** |

I work or worked for Defendants Dash Lube, Ghardash Enterprises, Inc., Kayla Corp, Payam Ryan Ghardash, and Poya Paul Ghardash ("Jiffy Lube") as an hourly employee and worked uncompensated overtime. I choose to participate in the above-captioned lawsuit, to recover unpaid overtime and/or minimum wages under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), and other relief under federal law.

I choose to be represented in this action by the named plaintiffs and Sommers Schwartz, P.C. ("Plaintiffs' Counsel"). I agree to be bound by their decisions in the litigation and by any adjudication of this action by a court, whether it is favorable or unfavorable. I understand that reasonable costs expended by Plaintiffs' Counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiffs' Counsel will petition the Court to award them attorneys' fees from any settlement or judgment.

I also consent to join any separate or subsequent action to assert my claims against Jiffy Lube, and/or any related entities or persons potentially liable.

Print Name: Roberto Moreno

Signature:

Date: 07/11/2018

1

CONSENT TO JOIN COLLECTIVE ACTION

# EXHIBIT 3

**Inventory**      **Employees**      **Reports**      **Setup**

## Time for Current Pay Period

User Name:   RMM

| Store | Date | Day | Clock In | Clock Out | Hours | Pay Perio |
|-------|------|-----|----------|-----------|-------|-----------|
| 1803 | 01/09/2018 | TUESDAY | 10:05 AM | 1:23 PM | 3.3 | 11.5 |
| 1803 | 01/09/2018 | TUESDAY | 2:06 PM | 7:17 PM | 5.2 | 16.7 |
| 1803 | 01/10/2018 | WEDNESDAY | 10:24 AM | 1:05 PM | 2.7 | 19.4 |
| 1803 | 01/10/2018 | WEDNESDAY | 2:04 PM | 7:00 PM | 4.9 | 24.3 |
| 1803 | 01/11/2018 | THURSDAY | 10:02 AM | 12:58 PM | 2.9 | 27.3 |
| 1803 | 01/11/2018 | THURSDAY | 1:28 PM | 7:31 PM | 6.1 | 33.3 |
| 1803 | 01/12/2018 | FRIDAY | 10:17 AM | 1:09 PM | 2.9 | 36.2 |
| 1803 | 01/12/2018 | FRIDAY | 1:41 PM | 7:00 PM | 5.3 | 41.5 |
| 1803 | 01/14/2018 | SUNDAY | 7:44 AM | 12:46 PM | 5.0 | 46.5 |
| 1803 | 01/14/2018 | SUNDAY | 1:17 PM | 7:08 PM | 5.9 | 52.4 |

Esc - Exit          + PgUp          - PgDn

# EXHIBIT 4



## Employee Timesheet Report

Report Last Executed by 460 at 01/21/2018

Date Range: 1/8/2018 – 1/14/2018

Entity: Ghardash Enterprises Group; Groups: Ghardash Enterprises Group; Stores: 1803

Additional Parameters: Employee(s)= RMM – ROBERT MORENO; Include Terminated: No; Report Sorted:By Last Name

Store: 1803

### Home Store Employees

MORENO, ROBERT -

Payroll ID: 0000007327

User ID: RMM

| Date | Day Of Week | Work Store | Clock In | Clock Out | Hours |
|------|-------------|-----------|----------|-----------|-------|
| 01/09/2018 | MONDAY | 1803 | 10:21 AM | 01:04 PM | 2.7 |
| 01/08/2018 | MONDAY | 1803 | 02:04 PM | 07:27 PM | 5.4 |
| 01/09/2018 | TUESDAY | 1803 | 10:05 AM | 01:23 PM | 3.3 |
| 01/09/2018 | TUESDAY | 1803 | 02:23 PM | 07:17 PM | 4.9 |
| 01/10/2018 | WEDNESDAY | 1803 | 10:24 AM | 01:05 PM | 2.7 |
| 01/10/2018 | WEDNESDAY | 1803 | 02:04 PM | 07:00 PM | 4.9 |
| 01/11/2018 | THURSDAY | 1803 | 10:02 AM | 12:58 PM | 2.9 |
| 01/11/2018 | THURSDAY | 1803 | 01:28 PM | 07:31 PM | 6.1 |
| 01/12/2018 | FRIDAY | 1803 | 10:17 AM | 01:09 PM | 2.9 |
| 01/12/2018 | FRIDAY | 1803 | 02:09 PM | 07:00 PM | 4.9 |
| 01/14/2018 | SUNDAY | 1803 | 07:44 AM | 12:46 PM | 5.0 |
| 01/14/2018 | SUNDAY | 1803 | 02:00 PM | 07:06 PM | 5.1 |

Total for Employee for Store 1803  50.8

Total for Employee for all Stores  50.8

Total Home Employee Hours for Store 1803  50.8

Total Home Employee Hours (including leaned) in all Stores  50.8

( ) = Time has been edited to = Clock out at End of Day/Day = Clock out that did not Validate store

# EXHIBIT 5



Jan 18

I think someone is messing with my time sheet.
4:45 PM

Someone has being change it.
4:45 PM

Umm the ones who can do that is Paul now.. I could do time edits before but anymore.... I know a chris le hisieron  time edits cus he was taking 30-45 minutes lunches .. what days were edited ,?????
4:51 PM

That sucks ▮▮▮▮▮. Tuesday and yesterday. I always stay with E.Z till he closes and for paul/ Ryan to do that is fucked up.
4:52 PM

Apenas t das cuenta como son ? I should know by now.. but ok.. no creo k sea Ryan el no se mete con eso I know l k hase todo dl papeleo es Paul.. tell ez to do a time edit paper I will send it to Ryan tomorrow para k t arregle I tiempo... for those day. 🤭
4:57 PM

Thanks.
4:57 PM

Enter message

Send

42

con eso I know I k hase todo dl papeleo es Paul.. tell ez to do a time edit paper I will send it to Ryan tomorrow para k t arregle l tiempo... for those day. 

4:57 PM

Thanks.
4:57 PM

Np...
4:58 PM

I'm going to text Paul about it. I'm tired of them mistreated us.
5:16 PM

You  have your rights.. go for it.., k t conteste es otra cosa
5:17 PM

5:21 PM

It's weird cus ellos mismos han dicho someone have to close w the closer ummm weird but ok
5:22 PM

— Feb 23 —

Take ur lunch pls
12:29 PM

— Feb 24 —

Enter message                    Send

43

# EXHIBIT 6

User Name: RMM

| Store | Date | Day | Clock In | Clock Out | Hours | Pay Period |
|-------|------|-----|----------|-----------|-------|------------|
| 1803 | 04/16/2018 | MONDAY | 10:19 AM | 12:47 PM | 2.5 | 2.5 |
| 1803 | 04/16/2018 | MONDAY | 1:47 PM | 5:00 PM | 3.2 | 5.7 |
| 1803 | 04/17/2018 | TUESDAY | 10:58 AM | | | 5.7 |

Exit    PgUp    PgDn

# EXHIBIT 7



# EXHIBIT 8

| Store | Date | Day | Clock In | Clock Out | Hours | |
|---|---|---|---|---|---|---|
| | 04/16/2018 | MONDAY | 10:19 AM | 12:47 PM | 2.5 | |
| | 04/16/2018 | MONDAY | 1:47 PM | 7:00 PM | 5.2 | 9.9 |
| | 04/17/2018 | TUESDAY | 10:58 AM | 1:13 PM | 2.3 | |
| | 04/17/2018 | TUESDAY | 2:11 PM | 7:14 PM | 5.1 | 15.0 |